No. 3495

Second Circuit

BANK OF WINNFIELD v. HOLMES

(July 1, 1929. Opinion and Decree.)

R. W. Oglesby, of Winnfield, attorney for plaintiff, appellee.

C. H. McCain, of Colfax, attorney for defendant, appellant.

REYNOLDS, J. Plaintiff, Bank of Winnfield, sued defendant, J. L. Holmes, to obtain judgment against him for $1,000 with interest thereon at the rate of 8 per cent per annum from September 1, 1927, and 10 per cent on the amount of principal and interest, as attorney's fees, on a promissory note for $1,000, dated March 4, 1927, signed by E. C. Paulette, drawn payable to the order of plaintiff on May 3, 1927, and bearing interest at the rate of 8 per cent per annum from its date until paid and stipulating payment of 10 per cent on the amount of principal and interest, as attorney's fees, if placed in the hands of an attorney for collection, and endorsed by the defendant. Endorsements on the note show that the interest thereon was paid up to September 1, 1927.

The defense is that the note—

"was liquidated and paid by E. C. Paulette on the 28th day of March, 1927, wherein the said E. C. Paulette, in a transfer or sale of various oil and mineral contracts, and etc. for the sum of sixty five hundred dollars, to the Bank of Winnfield, a copy of said sale being hereto attached and made a part hereof. Although the consideration is expressed in cash, in fact no cash was paid, the real consideration of the said contract being the payment of the note sued on herein and other debts due by said Paulette to Bank of Winnfield."

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant, as prayed for, and the defendant appealed.

## OPINION

Only one question, and that a question of fact, is presented by the record, and that whether the note sued on was paid.

. And the burden of proving the fact was on the defendant.

Valdoz vs. O'Keefe, 2 La. App. 362.

The defendant, J. L. Holmes, testified that about thirty days after the note was made he noticed that Paulette had made the transfer to the plaintiff and he mentioned the matter to him and that Paulette said the note was included and that he asked him where the note was and Paulette told him the defendant kept it so it could keep his business straight, and that—

"Mr. Paulette and I gets in my car and come to Winnfield right along about the first of April or a few days after and come in to the Bank of Winnfield and asked Mr. Bailey (president of the bank), and I said: 'Mr. Bailey, Mr. Paulette said he transferred this stuff to you and I want to know if this thousand dollar note of mine was included in it' and he said 'yes'; and he agreed to give Mr. Paulette a letter showing what was included in the transfer.

\*    \*    \*    \*    \*    \*

"Q. He told you this note had been paid?
"A. Yes, sir; paid and taken care of in this transaction.
"Q. If Mr. Bailey told you that, on that occasion, you say about a month after the note was given, why didn't you get that note?
"A. Mr. Bailey stated he was keeping all the notes there as a record, so that he could credit all the oil runs on the notes.
"Q. Do you know where that letter is?

"A. I have an idea where it is.

"Q. Where is it?

"A. I think Mr. Elder has it in his files."

In the transfer by Paulette to the Bank of Winnfield referred to Paulette assigns to the Bank of Winnfield for a recited consideration of $6500 in cash,

"all his right, title and interest in and to that certain oil, gas and mineral contract sold to the Gulf Refining Company of Louisiana on the 19th day of November, 1926, which contract is signed by J. L. Holmes, E. C. Paulette, C. L. McCurry, J. W. Elder, S. L. Digby, Dhu Thompson, and C. B. Roberts and the Gulf Refining Company of Louisiana on a certain lease executed by L. C. Swope to C. L. McCurry, agent, March 17, 1925, on certain lands situated in the parishes of Grant and Winn, Louisiana, duly recorded in the conveyance records of the said parishes, a copy of said contract being attached hereto and made a part of this assignment. And also his right, title and interest in and to one thirty-second overriding royalty of all oil that may be saved from that produced from each well on the premises described in the assignment, said contract having been entered into by the same parties above referred to on the 19th day of November, 1926.

⁂    ⁂    ⁂    ⁂    ⁂

Holmes was asked:

"Q. You know that the Bank of Winnfield foreclosed on all that stuff down there and sold it, don't you?

And he answered:

"A. I know they foreclosed and sold it."

E. C. Paulette, the maker of the note, testified:

"Q. Paulette, do you mean to tell the court that the Bank of Winnfield gave you that indebtedness for this property assignment?

"A. I mean to tell you that you drew the papers and know all about the transaction.

"Q. Don't you know that that was a matter of security to the Bank of Winnfield?"

On objection of counsel for defendant the witness was not permitted to answer this question.

"Q. You have been talking about the letter, where is it?

"A. Judge Elder has it, I suppose; I turned it over to him.

"Q. Don't you know that that letter you are talking about stated that when you paid this money back, that you borrowed from the Bank of Winnfield, that this stuff would be deeded back to you?

"A. I thought this was a mortgage and loan, which it was, and when it went on record I found out it was a straight sale of my right, title and interest—a straight sale for $6500; and Mr. Holmes and myself come back and got a letter that this stuff would be deeded back to me when this $6500 was paid."

J. W. Elder testified that he represented Paulette in the transaction between him and the Bank of Winnfield wherein the assignment was given, and he was asked:

"Did you have a conversation with B. W. Bailey, president of the Bank of Winnfield, as to whether the note sued on, for $1,000, had been paid and included in a previous settlement?"

And he said:

"That was some time ago and my recollection is not clear about everything that happened."

B. W. Bailey, the president of the plaintiff bank, testified that the assignment by Paulette to the Bank and claimed by him to be a sale was a mere security.

"Q. It says in it, the instrument, it is a sale?

"A. Perhaps so; but it was never treated as a sale. Besides, if we had re-

garded it as a sale, why did we foreclose on it, and sell it?"

He was asked if he had told Holmes in Paulette's presence, as testified by the former, that the note had been liquidated and paid by the assignment, and he answered:

"I am very positive I never made any such statement."

He was then asked if he had ever made any such statement to J. W. Elder, and he replied:

"No, sir; I did not."

There is no contention on the part of defendant that the note was paid otherwise than by the assignment; and that instrument did not evidence a sale but a security. That Holmes only intended it as such appears from his surprise on reading it on the public records and his and Paulette's going to Bailey and demanding of and receiving from him a counter-letter acknowledging that it was only a security.

Bailey never contended that it was anything more than a security. As a matter of fact he brought suit on it and foreclosed Paulette's rights in the pledged property by judgment and sale.

If Paulette had believed he was paying the note by the assignment he would have demanded and received it from the Bank and in that case Holmes would at least have insisted that his endorsement be cancelled. But Paulette did not ask that it be returned and Holmes did not ask that his endorsement be cancelled.

In the case of Allison-Langston Supply Co., Inc., vs. E. C. Paulette, 10 La. App. 484, 119 So. 709, we had under consideration the nature of the very same transfer, and we there held that the instrument was not a sale but a security.

We find no error in the judgment appealed from and accordingly it is affirmed.